UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LARRY R. HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-CV-37 |
| | ) | (SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 16]. The matters presently pending before this Court are the plaintiff's motion for summary judgment [Doc. 10] and the defendant's motion for summary judgment. [Doc. 14]. Plaintiff Larry R. Harvey ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the defendant Commissioner ("the Commissioner").

### **I.    ALJ Findings**

ALJ K. Dickson Grissom made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2003.
>
> 2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).
>
> 3.  The claimant has the following severe impairments: back pain, shortness of breath, poor vision, and diabetes (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically exceeds one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. The claimant must avoid pulmonary irritants; work requiring acute bilateral visions; and hazards, including motor vehicles. The claimant has an inability to deal with the public due to speech limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). The claimant has past relevant work as a mason, electrician, and carpenter. The vocational expert testified that such skilled work was performed at the medium to heavy exertional level. Accordingly, the claimant is unable to perform past relevant work.

7. The claimant was born on September 30, 1952 and was 51 years old on the alleged disability onset date, which is defined as closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from June 1, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-19].

## II. Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 1142 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997). Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324, 1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached"); Dorton v.

4

Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## IV. Arguments

Plaintiff argues on appeal that the ALJ erred by: (A) failing to evaluate all of Plaintiff's impairments and by failing to consider all of Plaintiff's limitations affecting his ability to do basic work activities and (B) failing to afford controlling weight to Plaintiff's treating physician's medical opinions. [Doc. 11]. The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. [Doc. 15]. Specifically, the Commissioner argues: (A) the ALJ correctly considered and assessed Plaintiff's limitations affecting his ability to do basic work activities and (B) correctly weighed the medical opinions of record. [Id.].

### A. *Evaluating All Impairments and Their Effect*

Plaintiff argues the ALJ erred by failing to evaluate all of Plaintiff's impairments and by failing to consider all of the limitations affecting his ability to do basic work activities. [Doc. 11]. The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. [Doc. 15]. Specifically, the Commissioner argues the ALJ correctly considered and assessed plaintiff's limitations affecting his ability to do basic work activities and correctly weighed the medical opinions of record. [Id.].

The ALJ determined that Plaintiff was capable of light work, but he must avoid pulmonary irritants, work requiring acute bilateral vision, and hazardous activities,

5

including driving a motor vehicle. [Tr. 14-19]. The ALJ also determined that Plaintiff was limited in his ability to converse with the public because of speech limitations. [Id.]. The ALJ did not find Plaintiff's alleged degree of complaints of pain fully credible because Plaintiff cares for his personal needs; he drives, grocery shops, prepares simple meals, does laundry, cleans house, attends church, visits with friends and relatives, and goes fishing for a hobby. [Tr. 16]. Regarding how he made his determination, the ALJ stated:

> As for the opinion evidence, the undersigned gives great weight to the opinion of the consultative examining physician[,] Dr. Basile[,] who limited the claimant to light work. The claimant's physical capacity limitation to light work is considered more than reasonable in light of the fact that the April 2004 medical source statement of the State Agency physician only limited the claimant to medium work. While family physician Dr. Lenoir limited the claimant to the performance of sedentary work, the undersigned is convinced that such excessive restrictions are based primarily on the subjective complaints of the claimant rather than on the objective medical evidence of record.

[Tr. 16]. The ALJ coupled his determination as to the medical opinions of record with the vocational expert's testimony from the hearing. [Tr. 18]. The ALJ relied on the vocational expert's testimony, as framed by his hypothetical, and found that Plaintiff could do unskilled sedentary and light work in positions such as production laborer, small products assembler, and hand packer. [Tr. 18].

As noted above, this Court must review the record as a whole. Cutlip, 25 F.3d at 286. The standard for review is not de novo, but rather whether substantial evidence exists to support the ALJ's findings. Buxton, 246 F.3d at 772; Garner, 745 F.2d at 387.

Dr. Daniel Lenoir ("Dr. Lenoir"), Plaintiff's treating physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on August

6

15, 2005. [Tr. 266-269, 283]. He determined that Plaintiff could occasionally and frequently lift ten pounds, stand for less than two hours in an eight-hour workday, and periodically alternate between sitting and standing to relieve pain and discomfort. [Tr. 266-69]. Additionally, he noted that Plaintiff is limited in his abilities to push and pull because of his upper extremities. [Id.]. He wrote that Plaintiff should never be on a ladder, rope, scaffold, ramp, or stairs, and that Plaintiff should not balance, stoop, kneel, crouch or crawl. [Id.]. Plaintiff is limited in his manipulative ability to reach in all directions, handle, finger, and feel. [Id.]. He is also limited in his sight and speech, but he is not limited as to hearing. [Id.]. His environmental limitations include avoiding temperature extremes, dust, humidity and wetness, hazards, fumes, odors, chemicals, and gases, but do not include noise and vibration. [Id.]. Throughout the medical assessment, Dr. Lenoir cited to a magnetic resonance imaging as proof of his findings. [Id.]. In his medical notes, Dr. Lenoir stated that Plaintiff appeared in "mild distress" on February 21, 2005, and April 4, 2005. [Tr. 223]. He noted that Plaintiff does not balance on his left foot, walks with a limp, and cannot walk on his toes. [Tr. 223-24]. Additionally, Dr. Lenoir stated that Plaintiff has left-sided weakness resulting from a stroke. [Tr. 270].

Dr. James Basile ("Dr. Basile"), is a consultative physician with Tennessee Disability Determination Services. [Tr. 200-203]. He noted that Plaintiff ambulates normally without difficulty and that his pulmonary function tests were normal. [Id.]. He also noted that Plaintiff had slightly slurred speech, normal grip strength, and was a poor historian. [Id.]. Ultimately, Dr. Basile assessed that Plaintiff

> [s]hould be able to occasionally lift 20 pounds one-third in an eight-hour work day, frequently lift 10 pounds one-third to two-third in an eight-hour work day. He should be able

7

> to stand or walk about six hours in an eight-hour work day.
> Sits for six hours in an eight-hour work day.

[Id.].

Dr. Robert E. Burr completed a physical RFC assessment regarding Plaintiff on April 28, 2004. [Tr. 209-216].[1] He stated that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and sit or stand for about six hours in an eight-hour workday. [Id.]. He also assessed Plaintiff as having an unlimited ability to be on a ladder, rope, scaffold, ramp, or stairs, and to balance, stoop, kneel, crouch, or crawl. He assessed no manipulative, communicative, or environmental limitations, but noted that Plaintiff was visually impaired in his left eye. [Id.].

On April 29, 2004, Kristin Davison, an examiner for the Tennessee Department of Human Services Vocational Assessment, assessed a residual functional capacity of medium work with frequent postural changes and limited visual ability in the left eye. [Tr. 103-104]. She determined that Plaintiff could return to his past relevant work of a carpenter, which she assessed as light work. [Id.].

Plaintiff testified that he is unable to work because he had a light stroke, which affected his left side, speech, memory, and ability to function. [Tr. 282, 284]. He also noted that diabetes had permanently damaged his eye, and he can see "very little" out of his left eye. [Tr. 286-87]. Regarding his impairments, he noted that he is paralyzed on the left side, has balance problems, suffers from major and miniature strokes, has numbness in the side of his face and in his hands, has difficulty speaking, has left-side leg pain, has muscle spasms in his backs and legs, suffers from diabetes, has chronic obstructive pulmonary disorder, limps, cannot think clearly, struggles with memory and

---
[1]Much of this report is illegible.

thinking, has breathing problems around odors and fumes, is easily frustrated, and cannot be in the sun because of a history of skin cancer. [Tr. 112-22]. To ambulate, he sometimes uses a cane, which was recommended by Dr. Lenoir. [Id.].

He further reported that he cooks for himself, cleans his house, does laundry, rides a lawn-mower for short periods of time, prepares meals, and goes fishing. [Tr. 88-89, Tr. 112-122]. He notes that he has constant pain, generally cannot see well, has trouble using his hands and legs, and has difficulty speaking. [Id.]. He also stated that his pain medication, Darvocet[2], only relieves his pain for about an hour, and he takes it about four times a day. [Tr. 90-93, 112-122]. He also reported that he does not generally breathe well, and undergoes breathing treatment each day for thirty minutes. [Id.]. He also noted that his balance problems make it challenging to get in and out of his bathtub. [Id.]. As to his general functionality, Plaintiff self-reported that he can only walk for ten minutes before he needs to sit or lie down. [Tr. 112-22]. He can sit for thirty minutes before he needs to stand up or lie down. [Id.]. He stated that in an eight hour day, he can stand for one hour, walk for forty-five minutes, and sit for four to five hours. [Id.].

Jerry Harvey, Plaintiff's brother, completed a Third Party Function Report. [Tr. 79-87]. He noted that Plaintiff could prepare his own food, do his own laundry, perform minor household repairs, ride the lawn-mower, drive, and shop for groceries. [Id.]. He follows written instructions slowly, follows spoken instructions, and gets along fairly with authority figures. [Id.]. Jerry Harvey also stated that Plaintiff's conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, remember, climb

---

[2]Darvocet is the brand name for propoxyphene, which is used to relieve mild to moderate pain. National Library of Medicine, <u>MedlinesPlus Drug Information: Propoxyphene</u>, http://www.nlm.nih.gov/medlineplus/ druginfo/medmaster/a682325.html (last visited Aug. 1, 2007).

9

stairs, use his hands, complete tasks, concentrate, understand, and follow instructions. Moreover, Plaintiff does not handle stress well. [Id.].

Emma Harvey, Plaintiff's mother, also completed a Third Party Function Report. [Tr. 70-78]. [Id.]. Her report largely echoes that of Jerry Harvey. [Id.]. She noted that Plaintiff can do routine housework, laundry, go shopping, prepare his own food, drive, and mow the lawn with a riding lawn-mower. [Id.]. She said that his conditions affect his ability to lift, climb stairs, use his hands, reach, see, remember, and concentrate. [Id.]. She emphasized that he is almost blind in one eye. [Id.]. She stated that he gets along acceptably with authority figures and follows written and verbal instructions moderately well, but he does not handle stress well. [Id.].

The vocational expert, Ann Thomas ("Ms. Thomas"), analyzed Plaintiff's past relevant work and determined that an electrician performed medium, skilled work; a carpenter, medium, skilled work; and a mason, heavy, skilled work. [Tr. 286]. She opined that skills from these jobs are not transferable to either light or sedentary work. [Tr. 287]. The ALJ then posed a hypothetical question, with the following parameters: a residual functional capacity for light work, an inability to be around environmental pollutants, no hazardous activities, no motor vehicle operation, no work which requires acute bilateral vision, and a speech limitation, manifested as an inability to enunciate clearly. [Tr. 287]. Ms. Thomas stated that under this hypothetical, all of Plaintiff's prior relevant work would be excluded. [Tr. 288].

When the ALJ's hypothetical parameters were considered along with other vocational factors, including an age closely approaching advanced age, a high school education, and prior relevant work, Ms. Thomas stated that jobs are available. She

further stated that representative jobs include production laborer and hand packer, of which there are over 13,000 in Tennessee and 556,000 in the United States. [Id.]. Ms. Thomas also noted that at a sedentary, unskilled level with the above listed restrictions, a person could obtain employment in the representative positions of production laborer and small products assembler. [Tr. 288-89]. Upon further questioning, she noted that pain, in a mild or moderate degree, would not alter her findings, but that severe pain would eliminate work on a sustained basis. [Tr. 289]. The ALJ then asked Ms. Thomas, "[A]ssume that I might find this claimant to have a combination of impairments, such as would preclude his ability to work for eight hours a day, five days a week on a regular, sustained basis, how would that alter or change your testimony?" [Tr. 289]. And she replied, "[I]t would eliminate work of any kind at that point." [Id.].

Plaintiff's attorney, Mr. Agee, then questioned Ms. Thomas. [Tr. 290-91]. The testimony is as follows:

> Mr. Agee: I'd like to ask you to assume an individual who is limited to a residual functional capacity for sedentary work, of the claimant's age and education. Further assume that he was limited in his standing and walking to a total of less than two hours a day, and sitting for up to six hours a day, but alternating sitting and standing throughout the day. Further assume that the individual should never climb, balance, kneel, crouch, crawl, or stoop, due to balance problems, and that due to problems with his left side, left upper extremities, that he should only have occasional reaching, handling, fingering, and feeling.
>
> The ALJ: Is that with the left upper extremity or both extremities, Mr. Agee?
>
> Mr. Agee: That would be both upper extremities. And further assume that the claimant was limited from performing close and detailed work, and that due to limitations with speaking, that he

11

> was limited in dealing with the public. Assuming those facts in the hypothetical, would there be any jobs available to the claimant?
>
> Ms. Thomas: Not at that point, no.

[Tr. 290-91]. Ms. Thomas also stated that if a sedentary residual functional capacity with upper extremity issues was limited to the left side and not the upper extremities in toto, there would not be significant numbers of jobs in the national economy. [Tr. 291]. Ms. Thomas later stated that if the residual functional capacity as framed by Mr. Agee's line of questioning was altered to light work with the same impairments included, there would still not be any jobs available to the claimant in significant numbers in either the local or the national economy. [Tr. 290-91].

A vocational expert's testimony can constitute substantial evidence only if the testimony is in response to a hypothetical question that accurately portrays a claimant's abilities. Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990). However, if a hypothetical posed on cross-examination cures the error made by the ALJ in questioning the vocational expert, then the ALJ's error is harmless. See Nash v. Sec'y of Health & Human Servs., No. 94-5376, 1995 U.S. App. LEXIS 15129, at *9 (6th Cir. June 15, 1995); see also Shkabari v. Gonzales, 427 F.3d 324, 328 (6th Cir. 2005) (holding that "no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

The Court finds that the hypothetical posed by the ALJ omitted some of the very impairments which the ALJ ultimately determined to be severe: back pain and shortness of breath. [Tr. 14-19]. Neither of these conditions were included in the hypothetical posited by the ALJ or in that posited by Mr. Agee. Additionally, the ALJ's hypothetical

does not include any left-sided restrictions, though the record establishes that Plaintiff has suffered strokes and his treating physician found that there was left-side weakness. [Tr. 266-70]. Accordingly, a remand is appropriate to ascertain whether there are jobs available in the local and national economy, of significant number, that can be performed by someone with Plaintiff's restrictions and impairments.

### B. *Weight of the Treating Physician's Opinion*

Plaintiff's second argument dovetails with the first. He argues the ALJ erred by failing to afford controlling weight to Plaintiff's treating physician's medical opinion. [Doc. 11]. The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. [Doc. 15]. Specifically, the Commissioner argues the ALJ correctly weighed the medical opinions of record when determining Plaintiff's impairments and residual functional capacity for work-related purposes. [Id.].

Initially, the Court notes that the treating physician is entitled to substantial deference. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Dr. Lenoir is Plaintiff's treating physician, and Dr. Charles W. Bruton ("Dr. Bruton") is Plaintiff's treating pulmonologist. [Tr. 283-84].

On January 31, 2005, Dr. Lenoir noted that Plaintiff mildly limps. [Tr. 224]. On February 21, 2005, Dr. Lenoir noted that Plaintiff walks with a limp, cannot balance on his left foot, and recently had a stroke. [Tr. 223]. Additionally, the doctor noted Plaintiff's lungs showed "mild wheezing." [Id.]. On several occasions, however, Dr. Lenoir noted that Plaintiff's lungs were clear: January 31, 2005; February 4, 2005; April 4, 2005; and August 15, 2005. [Tr. 223-24, 270]. On August 15, 2005, Dr. Lenoir again

noted that Plaintiff has left-sided weakness as a result of a stroke. [Tr. 270]. Dr. James Lynch also noted that Plaintiff previously suffered a stroke. [Tr. 138-40].

Dr. Bruton diagnosed Plaintiff with chronic obstructive pulmonary disorder on the following dates: July 24, 2002; October 1, 2002; January 6, 2003; November 4, 2003; January 26, 2004; and March 3, 2004. [Tr. 175, 179-80, 184-85, 189]. Additionally, numerous computed tomography scans were performed by Doctors Lee Sider and Jefferey Miller ("Dr. Miller"). [Tr. 188, 254, 256, 258, 260, 262]. These scans indicate that, as of December 18, 2001, Plaintiff had a right upper lobe nodule in his lungs. [Tr. 254]. The record reflects that this nodule grew from 7 by 4 millimeters on December 18, 2007, to 9 by 4.5 millimeters on February 11, 2003. [Tr. 254, 262]. Of note, on January 22, 2004, Dr. Miller stated that the nodule shows no current evidence of "intrathoracic malignancy." [Tr. 264]. Dr. William J. Roberts also noted that Plaintiff had a possible pulmonary nodule as of January 11, 2002. [Tr. 149-59].[3]

Dr. William Davis, who performed a cerebrovascular evaluation of Plaintiff on February 11, 2005, diagnosed Plaintiff as previously experiencing a "[l]eft side neurologic insult." [Tr. 226-27]. He also noted the follow impressions:

> 1) Grade 2 disease of the right internal carotid artery (20-39% reduction). 2) Grade 2 disease of the left internal carotid artery (20-39% diameter reduction). There is also significant calcific plaque in the left carotid plaque in the left carotid bulb, which obscures the evaluation of the left carotid bulb. 3) Normal subclavian arterial study. 4) Bilateral antegrade vertebral artery flow.

[Tr. 226-27]. On February 17, 2005, Dr. Peter Claussen, a radiologist, noted that Plaintiff had a "[r]emote infarction [a]ffecting the left corona radiate." [Tr. 230-31].

---

[3] This report is largely illegible.

The ALJ based his decisions almost exclusively upon the medical opinion of Dr. James Basile. [Tr. 16]. Dr. James Basile is a consultative examiner with Tennessee Disability Determination Services. [Tr. 200-203]. He performed a consultative exam on Plaintiff on April 22, 2004, and determined that Plaintiff ambulates without difficulty and has normal pulmonary function. [Id.]. He suffers from slightly slurred speech, but has normal grip strength. [Id.].

The law requires that the treating physician's opinions be given controlling weight if it is well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. Rogers v. Comm. of Soc. Sec., 486 F.3d 234, 242 (6th Cir.2007). Further, "[t]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Id. (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). The Court finds that the ALJ's findings do not delineate the reasons for rejecting the treating physicians' opinions in a manner which is sufficiently clear for review. Accordingly, on remand the ALJ should make specific findings in accordance with the requirements of Rogers and provide "good reasons" for discounting the treating physician's opinions.

## V. Conclusion

For the reasons stated herein, it is **ORDERED** that the Commissioner's motion for summary judgment [Doc. 14] is **DENIED** and Plaintiff's motion for summary judgment [Doc. 10] is **DENIED**, except as to the request for remand for a hearing, which should be **GRANTED**, as set forth above. Accordingly, the final decision of the Commissioner is **REVERSED** and **REMANDED** for further evaluation of Plaintiff's claim pursuant to sentence four of 42 United States Code Section 405(g).

**IT IS SO ORDERED.**

ENTER:

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge